UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BELINDA SOLIS, | Case No.: 5:11-CV-00605-EJD |
| Plaintiff, | **ORDER GRANTING WALGREENS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| WALGREEN CO., | |
| Defendant. | **[Re: Docket No. 31]** |

Presently before the court in this employment discrimination and retaliation action is Defendant Walgreen Co.'s ("Walgreens") Motion for Summary Judgment. Dkt. No. 31. The court previously found this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and vacated the hearing. Having reviewed the parties' briefing, and for the reasons that follow, the court GRANTS Walgreens' Motion for Summary Judgment.

**I. BACKGROUND**

  **a. Ms. Solis' Disability and Accommodations**

Plaintiff Belinda Solis ("Ms. Solis") worked at Walgreens' Seaside location ("the Seaside store") from February 11, 1999 until her departure on May 28, 2010. Compl. ¶ 4, Dkt. No. 1; Declaration of Scott Plamondon ISO Def. MSJ ("Plamondon Decl.") Ex. B at 92:1-3, Dkt. No. 37. During her eleven-year tenure at the Seaside store, Ms. Solis received good performance

1

Case No.: 5:11-CV-00605-EJD
ORDER GRANTING WALGREENS' MOTION FOR SUMMARY JUDGMENT

evaluations and was promoted from cashier, to Pharmacy Technician, to Senior Pharmacy Technician. Declaration of Belinda Solis ISO Pl. Opp'n ("Solis Decl.") ¶¶ 1-5, Dkt. No. 40-1.

In December 2004, Ms. Solis was diagnosed with ulcerative colitis, an inflammatory bowel disease that causes intestinal bleeding, bloody diarrhea, and cramping. Compl. at ¶¶ 7-8; Declaration of Christy W. Granieri ("Granieri Decl.") Ex. A at 15:14-17; Ex. C at 11:9-12:19, 32:3-33:9, 33:21-34:9. In 2008, she was diagnosed with fibromyalgia, bursistis in her hips, and tendinitis in both arms. Solis Decl. ¶ 7; Granieri Decl. Ex. C at 58:11-23. The parties do not appear to dispute that Ms. Solis was disabled.

Ms. Solis sought two accommodations for her disability: a modified work schedule and the use of a handicapped parking space. Granieri Decl. Ex. A at 44:1-16; Ex. C at Christensen Dep. Exs. 2, 8. Walgreens granted Ms. Solis a schedule of seven to eight hour shifts, five days per week. Declaration of Patrick Servais ISO Def. MSJ ("Servais Decl.") ¶ 29, Dkt. No. 34;[1] Plamondon Decl. ¶¶ 14-15, Ex. K. Walgreens' then-pharmacy manager Mr. David Duncan and store manager Mr. Patrick Servais both initially questioned Ms. Solis' use of handicapped parking. However, after speaking with District Pharmacy Supervisor Mr. Brett Stark, the Seaside store managers permitted her to use handicapped parking without repercussion. Compl. ¶¶ 20-27; Plamondon Decl. Ex. B at 49:10-17.

**a. Walgreens' Budgetary Control Measures**

In March 2010, Walgreens implemented new budgetary controls, which it explained through a budgetary control memorandum ("the Budget Control Memo") to its store managers. Declaration of Chris Murray ISO Def. MSJ ("Murray Decl.") ¶5, Ex. 2, Dkt. No. 36. The Budget Control Memo instructed managers to reduce store headcount by May 15, 2010 through a variety of measures including taking advantage of normal employee attrition, asking employees to voluntarily work less hours or transfer to stores with available budget hours, and instituting a

---

[1] Ms. Solis' Objections to the Declarations of Berrie Child, Chris Murray, Patrick Servais, Keral Patel, Herbert N. Weissman, and Scott Plamondon are OVERRULED. The declarants have signed their statements under penalty of perjury in substantial, albeit less than desirable, compliance with 28 U.S.C. § 1746. Additionally, as to Mr. Murray's declaration, Ms. Solis' argument is not compelling because she noticed Walgreens' 30(b)(6) deposition but failed to take it; as such Ms. Solis cannot demonstrate that she stands to suffer any prejudice as a result of Walgreens' failure to disclose.

2
Case No.: 5:11-CV-00605-EJD
ORDER GRANTING WALGREENS' MOTION FOR SUMMARY JUDGMENT

mandatory reduction in staffing. Id. To further its budgetary goals, Walgreens implemented a nationwide hiring freeze on June 15, 2010, which affected all of its 7,742 stores nationwide. Murray Decl. ¶ 6, Ex. 3. The Temporary Hiring Suspension notice stated in relevant part:

> Effective immediately, hiring for our community pharmacy staff is temporarily suspended in order to further support achieving our Q4 budgets. These restrictions apply to hiring internal and external candidates for pharmacists, technicians, and pharmacy cashiers…Hiring managers who are noncompliant will be subject to disciplinary action.
> Id.

Walgreens did not distribute this notice to store-level management until it officially announced the hiring freeze on June 15, 2010. Murray Decl. ¶ 7.

### b. Ms. Solis' Decision to Leave the Seaside Store

In early March 2010, Ms. Solis decided to move to Utah with her boyfriend. Plamondon Decl. Ex. B at 64:22-65:1, 65:18-25. Ms. Solis informed the Seaside store of her intention to move, and asked for help in securing a position at a Walgreens in her new town. Plamondon Decl. Ex. B at 71:8-19. Ms. Solis also attempted to secure her own position. She called a Walgreens located in Kaysville, Utah ("the Kaysville store"), and made contact with the pharmacy manager, Ms. Berrie Child. Ms. Solis and Ms. Child had a telephone conversation in which Ms. Solis explained that she was moving to Utah and hoped to find work at a Walgreens. The two discussed Ms. Solis' qualifications, and Ms. Child expressed interest in hiring her. Plamondon Decl. Ex. B at 71:14-15, 20-22, 72:6-19; Declaration of Berrie Child ISO Def. MSJ ("Child Decl.") ¶ 3, Dkt. No. 32. The parties agree that during this conversation Ms. Child told Ms. Solis that she would need to come to an in-person meeting once she arrived in Utah, but dispute whether or not Ms. Child made an employment offer during the phone call. Plamondon Decl. Ex. B at 73:14-16; Child Decl. ¶¶ 3-4.

While Ms. Solis was planning her move to Utah, the Seaside store was struggling to meet the May 15, 2010 deadline for headcount reduction set by the Budget Control Memo. Having been unsuccessful with voluntary reduction, the Seaside store's managers selected an employee, Theresa Elliot, for layoff, and informed Ms. Elliot of the decision. Servais Decl. ¶¶ 4-7. However, after her

3
Case No.: 5:11-CV-00605-EJD
ORDER GRANTING WALGREENS' MOTION FOR SUMMARY JUDGMENT

telephone conversation with Ms. Child and one week before the headcount reduction deadline, Ms. Solis informed Mr. Servais that she had secured a position at the Kaysville store and would be leaving the Seaside store on May 28, 2010. Servais Decl. ¶ 8; Compl. ¶ 46. Ms. Solis' departure created an opportunity for the Seaside store to reverse Ms. Elliot's lay-off. Servais Decl. at ¶ 8, 9, 13. Mr. Servais requested that Ms. Solis provide him written notice so that he could address Ms. Elliot's situation. Servais Decl. ¶ 9. Ms. Solis complied and submitted a letter dated May 7, 2010, which bore the heading "2 WEEKS NOTICE" and stated:

> My name is Belinda Solis and have worked for Walgreens Store 2867 in Seaside, CA for a little over 11 years and I will be transferring to a Walgreens in the state of Utah. My last day of work will be on May 28, 2010. I will be using my last vacation days after that date.

Compl. Ex. E.

Ms. Solis testified that she "wasn't sure exactly at that time if [she] was going to start in Kaysville, so [she] just put Utah." Plamondon Decl. Ex. B at 84:4-9. Ms. Solis worked her last day at the Seaside store on May 28, 2010 and moved to Utah in early June 2010. Plamondon Decl. Ex. B at 81:15-16, 92:1-3.

### c. Ms. Solis' Request to Return to the Seaside Store

Upon arriving in Utah, Ms. Solis contacted Ms. Child to set up the in-person meeting they had discussed. Plamondon Decl. Ex. B at 75:20-76:2. The two met on June 25, 2010. Child Decl. ¶ 6. Ms. Child thought Ms. Solis was "extremely competent" and wished to hire her. Plamondon Decl. Ex. G at 36:18, 37:6-9. However, Ms. Child told Ms. Solis she needed to speak with the district manager regarding her hire and pay, and that she would get back to her. Id. at 37:17-38:3. When Ms. Child contacted her district manager, she was informed of the nationwide hiring freeze and told that she was not allowed to hire any pharmacy technicians. Id. at 37:4-24. Therefore, Ms. Child contacted Ms. Solis and told her that she could not make an offer but suggested that Ms. Solis call her old store. Child Decl. ¶ 7; Compl. ¶ 55.

Without an offer from the Kaysville store, Ms. Solis called Mr. Servais and asked to return to the Seaside store. Compl. ¶¶ 56-57. Mr. Servais instructed Ms. Solis to contact Ms. Patel to see if the pharmacy had available hours. Id. at ¶ 57. When Ms. Solis spoke with Ms. Patel, she learned

4

Case No.: 5:11-CV-00605-EJD
ORDER GRANTING WALGREENS' MOTION FOR SUMMARY JUDGMENT

that the Seaside store no longer had room for her.  Id. at 58-59.  After that conversation, Ms. Solis never spoke with Mr. Servais, Ms. Patel, or Ms. Child again.  Plamondon Decl. Ex. B at 87:18-88:10, 89:3-10; Declaration of Keral Patel ("Patel Decl.") ¶ 6; Child Decl. ¶ 8.

### d. Procedural History

After filing complaints with the Equal Employment Opportunity Commission and California's Department of Fair Employment and Housing, Ms. Solis instituted this litigation against Walgreens on February 9. 2011.  See Compl. Ex. F; Plamondon Decl. Ex. B at 87:18-21.  Ms. Solis' Complaint alleges seven causes of action: (1) unlawful discrimination based upon physical disability in violation of the California Fair Employment and Housing Act ("FEHA"); (2) failure to reasonably accommodate physical disability in violation of FEHA; (3) failure to engage in the interactive process in violation of FEHA; (4) retaliation in violation of FEHA; (5) failure to prevent discrimination in violation of FEHA; (6) wrongful termination in violation of public policy; and (7) violation of California Labor Code Section 970.  Walgreens moves for summary judgment as to each cause of action.  The court will now turn to the substance of that motion.

## II. LEGAL STANDARD

A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party does not satisfy its initial burden, the nonmoving party has no obligation to produce anything and summary judgment must be denied.  Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102–03 (9th Cir. 2000).  On the other hand, if the moving party does meet this initial burden, the burden then shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324.  The court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324.

5
Case No.: 5:11-CV-00605-EJD
ORDER GRANTING WALGREENS' MOTION FOR SUMMARY JUDGMENT

However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. See Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c); see also Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). However, where the nonmoving party will have the burden of proof at trial on a particular issue, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. Provided there has been adequate time for discovery, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

### III. DISCUSSION

#### a. Discrimination and Retaliation Claims

FEHA prohibits employers from discriminating against employees on the basis of physical disabilities and medical conditions, or from retaliating against employees for engaging in protected activity pertaining to a disability. Cal. Gov't Code §§ 12940(a), (h). In analyzing FEHA discrimination and retaliation claims on summary judgment, federal and state courts apply the three-step burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998); Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 354 (2000). Under the McDonnell Douglas framework, the employee bears the initial burden of establishing a prima facie case of intentional discrimination or retaliation. If the plaintiff makes a prima facie showing, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Id. If the employer articulates such a reason, the burden shifts back to the plaintiff to show that the

6

1   employer's proffered explanation is merely pretext for a discriminatory or retaliatory motive. See
2   id. at 804.

3   Both Ms. Solis' discrimination and retaliation claims require a prima facie showing that, inter alia, Ms. Solis was subjected to an adverse employment action that was causally related to her disability or request for accommodation.  See Sandell v. Taylor-Listug, Inc., 188 Cal. App. 4th 297, 310 (Cal. Ct. App. 2010); Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005). Walgreens' burden on summary judgment is to show the absence of evidence to support any element of Ms. Solis' prima facie case.  However, the evidence necessary for Ms. Solis to meet her burden at this stage is "minimal;" she need only show "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a [prohibited] discriminatory criterion."  Sandell, 188 Cal. App. 4th at 310 (citations omitted).

Ms. Solis does not point to a single piece of evidence to establish her prima facie case of retaliation, and conveys her assumption that she has established her prima facie case of discrimination in a footnote.  To meet her burden of showing she suffered an adverse employment action because of her disability, Ms. Solis argues that Mr. Servais refused to allow her to return to the Seaside store even though she was an active employee (Granieri Decl. Ex. E at 65:23-25), that Mr. Servais did not attempt to obtain an exception to the hiring freeze for her or find availability for her at any other store (Id. at 63:8-15), and that Mr. Servais "flaunted his discrimination" on Facebook (Id. at Servais Dep. Ex. 10).

The first two assertions—that Mr. Servais refused to allow Ms. Solis to return to the Seaside location after she moved to Utah and that Mr. Servais failed to seek an exception to the hiring freeze or contact other stores regarding availability—fail to connect Ms. Solis' separation from Walgreens to her disability.  That Mr. Servais did not use all means available to him to reinstate Ms. Solis does not, by itself, raise an inference that Mr. Servais discriminated against her. Similarly, Ms. Solis' third assertion—that Mr. Servais bragged about his discriminatory treatment of Ms. Solis on Facebook—overstates the evidence and fails to raise an inference of discrimination. Mr. Servais' Facebook message to former Seaside store employee David Duncan reads: "You

would enjoy seaside [sic]! I have gotten rid of many many people…Belinda, along with about another 5-6 on the sales floor." Granieri Decl. Ex. E at Servais Dep. Ex. 10.  While this message certainly shows poor taste on the part of Mr. Servais, it does not go so far as to reveal any discriminatory animus based on Ms. Solis' disability.  These three pieces of evidence, even when taken together, are in fact devoid of any reference to Ms. Solis' disability, and thus fail to satisfy Ms. Solis' burden of proving that Walgreens terminated her because of it.

More importantly, Ms. Solis has failed to establish that she suffered an adverse employment action at all.  Ms. Solis claims that Walgreens "terminated" her because she suffered from a disability and requested accommodations.  However, the evidence shows that Ms. Solis was not terminated—she voluntarily resigned.

Ms. Solis made a personal decision to move to Utah because her boyfriend, the father of her daughter, had family there; however, Ms. Solis did not want to move without first having a job. Plamondon Decl. Ex. B at 64:22-65:1; Solis Decl. ¶¶ 8-9.  Walgreens does not have centralized hiring or transfer procedures and individual employees generally must secure their own transfers. Murray Decl. ¶ 3.  In keeping with this practice, Ms. Solis contacted Ms. Child, the pharmacy manager in the Kaysville store, regarding a possible opening.  The two had a telephone conversation in which they discussed Ms. Solis' upcoming move, her qualifications, and the need for an in-person meeting once Ms. Solis arrived in Utah.  Plamondon Decl. Ex. B at 71:14-15, 20-22, 72:6-19.  From that conversation, Ms. Solis assumed that she had been hired by the Kaysville store. Id. at 73:3-25.  Operating under that assumption, Ms. Solis told Mr. Servais she had secured a transfer and informed him of her intent to leave the Seaside store.  See Compl. Ex. E.  Ms. Solis worked her last day on May 28, 2010, and moved to Utah in early June 2010.  Plamondon Decl. Ex. B at 81:15-16, 92:1-3.

Even taking this evidence in the light most favorable to Ms. Solis, the court does not find Ms. Solis' argument that she never resigned, but rather was terminated, compelling. Nothing in this sequence of events suggests that Mr. Servais terminated Ms. Solis or duped her into moving to Utah so that she would be terminated from the Seaside store.  That Ms. Solis did not actually receive a job offer from the Kaysville store does not change the analysis—regardless of whether

8
Case No.: 5:11-CV-00605-EJD
ORDER GRANTING WALGREENS' MOTION FOR SUMMARY JUDGMENT

1   she actually had a position in Utah or not, Ms. Solis voluntarily separated from the Seaside store
2   when she stopped working at that location.  Similarly, that Mr. Servais maintained Ms. Solis'
3   "active" status after her last day at the Seaside store but later coded her separation into the
4   Walgreens' computer system does not constitute an adverse employment action.  Mr. Servais
5   refrained from coding Ms. Solis off as a courtesy, so that the transfer she said she had secured
6   could be accomplished smoothly.  Granieri Decl. Ex. A at 99:4-5 (reflecting Ms. Solis' testimony
7   that Mr. Servais said: "[y]ou already found the store and if there's anything else, I'll handle it");
8   Servais Decl. ¶¶ 14-15.  Once Ms. Solis called Mr. Servais from Utah to inform him that she did
9   not in fact have a position at the Kaysville store, and after confirming that the Seaside store did not
10  have availability, Mr. Servais no longer had any reason to continue this courtesy.  Therefore, he
11  formalized the separation according to Walgreens' policy, backdating her termination date to the
12  last day Ms. Solis actually worked plus her vacation pay.  Plamondon Decl. Ex. C at 44:7-45:2.

13          Ms. Solis has not pointed to any evidence suggesting that her move to Utah should have
14  been considered anything other than a separation from the Seaside store, or that Mr. Servais was
15  under any obligation to preserve her seniority and "active" status once she informed him she was
16  transferring to the Kaysville store, let alone after she informed him she did not actually have a
17  position in Utah.  Nor has Ms. Solis submitted evidence suggesting that her resignation should be
18  considered a constructive discharge.  See, e.g. Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238,
19  1244-45 (1994) (holding that a constructive discharge can be found when the employer either
20  intentionally created or knowingly permitted working conditions that were so intolerable or
21  aggravated at the time of the employee's resignation that a reasonable employer would realize that
22  a reasonable person in the employee's position would be compelled to resign).  Without any such
23  evidence, Ms. Solis cannot make a prima facie showing that she suffered an adverse employment
24  action because of her disability or requested accommodations.  Accordingly, the court GRANTS
25  Walgreens' Motion for Summary Judgment as to Ms. Solis' First and Fourth causes of action.
26  Because Ms. Solis was not terminated, her claim for wrongful termination must also fail.
27  Therefore the court GRANTS Walgreens' Motion for Summary Judgment as to Ms. Solis' Sixth
28  cause of action.

### b. Failure to Prevent Discrimination

California Government Code § 12940(k) makes it unlawful for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." A cause of action under this section is viable only if the defendant engaged in actionable discrimination. See Trujillo v. N. County Transit Dist., 63 Cal. App. 4th 280, 288–89 (Cal. Ct. App. 1998). While Ms. Solis points to numerous acts on the part of Mr. Servais to establish the existence of discriminatory animus, several of which were discussed in the previous section, she has nevertheless failed to raise a triable issue of fact as to whether discrimination occurred. The court will address each piece of the remaining evidence in turn.[2]

First, Ms. Solis points to Mr. Servais' handling of customer complaints regarding her use of a handicapped parking space. The evidence shows that customers did complain about Ms. Solis' use of the van-accessible handicapped parking space and that Ms. Solis told Mr. Servais about one particular customer's harassment. Granieri Decl. Ex. E at 25:24-26:3, 27:17-20, 29:20-30:13. According to Ms. Solis, Mr. Servais responded to these complaints by asking her to stop using handicapped parking, and failing to prevent the customer's harassment. However, the evidence shows that Mr. Servais did not ask Ms. Solis to refrain from using handicapped parking altogether, but rather only asked that she use a different handicapped space so that customers had access to the store's only van-accessible spot. Plamondon Supp. Decl. Ex. E at 40:3-23. Additionally, the evidence shows that Mr. Servais was willing to speak to customers about their treatment of Ms. Solis, but that he was never present when the harassing customers came in to the store. Granieri Decl. Ex. E at 30:5-13.

Second, Ms. Solis contends that Mr. Servais took away her scheduling accommodation after she informed him of her impending move to Utah. The submitted schedule shows that

---

[2] Ms. Solis only specifically points to "[Mr.] Servais' failure to stop customers from complaining about [Ms.] Solis['s] using the handicapped parking spots" to support her argument on the Failure to Prevent Discrimination claim. The remainder of the argument contains nothing but conclusory statements, which are insufficient to meet her burden on summary judgment. See Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 922 (9th Cir. 2001) ("[The plaintiff's] conclusory allegations unsupported by factual data are insufficient to defeat [the defendant's] summary judgment motion."). However, because Ms. Solis elsewhere provides details regarding Mr. Servais' alleged discriminatory animus, the court will address those arguments here.

10
Case No.: 5:11-CV-00605-EJD
ORDER GRANTING WALGREENS' MOTION FOR SUMMARY JUDGMENT

1   Walgreens afforded Ms. Solis a schedule of 8.5 hour shifts, five days a week, from May 8, 2010
2   until her departure on May 28, 2010.  Granieri Decl. Ex. G.  However, unlike past schedules, her
3   start times varied anywhere from 8:30 am to 12:30 pm.  Id.  While the court acknowledges that Ms.
4   Solis required "regular hours," Ms. Solis has not provided sufficient evidence to raise a question of
5   fact as to whether a schedule of 8.5 hours a day, five days a week, with varying start times is
6   outside the bounds of an acceptable accommodation.  See Granieri Decl. Ex. C at Christensen Dep.
7   Exs. 2, 8.  Moreover, Ms. Solis has not submitted sufficient evidence to show that Mr. Servais
8   controlled this scheduling change.  See Plamondon Decl. Ex. I at 16:17-24; Granieri Decl. Ex. E at
9   20:8-13.

10        Third, Ms. Solis argues that Mr. Servais "lied" about the Walgreens transfer policy by
11  telling her that he'd handle any necessary paperwork for her and that she could "just go to Utah and
12  start working."  See Granieri Decl. Ex. A at 99:18-23.  Once again, Ms. Solis's evidence belies her
13  argument.  She testified that Mr. Servais told her: "[y]ou already found the store and if there's
14  anything else, I'll handle it."  Granieri Decl. Ex. A at 99:4-5.  This statement suggests that Mr.
15  Servais' agreeing to handle the paperwork was contingent on his belief that Ms. Solis had secured a
16  position.  Contrary to this belief, Ms. Solis had not in fact secured a position at the Kaysville store.
17  No evidence suggests that Ms. Solis did not receive an offer in Kaysville due to any failing on the
18  part of Mr. Servais.  Rather, the record is clear that, though Ms. Child wished to make an offer to
19  Ms. Solis, the nationwide hiring freeze prevented her from doing so.  Granieri Decl. Ex. B at 33:4-
20  24; 50:12-51:16.

21        Fifth, Ms. Solis claims that Mr. Servais required her to provide a written notice letter,
22  contrary to Walgreens' policy, "so he could replace her after her transfer was approved."  Pl. Opp'n
23  15, Dkt. No. 40.  Though a written notice letter may not have been required under Walgreens'
24  transfer policy, it also was not forbidden.  As discussed above, Mr. Servais made clear that he
25  asked for a record of her notice so that he could restore a laid-off employee to her position.  See
26  Granieri Decl. Ex. E at 7-11; Servais Decl. ¶ 9.  Ms. Solis has simply failed to provide evidence to
27  support her argument that such a request, especially under the circumstances of the lay-off, was
28  contrary to Walgreens' policy, or that Mr. Servais required this letter because of some

1   discriminatory motive. Moreover, Ms. Solis has not provided evidence suggesting that this notice

2   letter had any greater effect on her status than her verbal notice and subsequent move to Utah.

3   Sixth, Ms. Solis contends that Mr. Servais unilaterally terminated her employment. She

4   bases this argument on the presumption that her informing Mr. Servais of her impending move to

5   Utah, submitting the notice letter, and moving did not constitute a resignation. However, as

6   discussed in the previous section, the evidence shows that Ms. Solis voluntarily resigned her

7   position at the Seaside store and that Mr. Servais was within his rights to formalize her separation

8   in the Walgreens computer system.

9   Despite the numerous references to Mr. Servais' alleged discriminatory animus, Ms. Solis

10  has failed to raise a triable issue of fact as to whether discrimination occurred. Instead, she relies

11  on conjecture and speculation—the evidence she supplies simply does not support her theory of

12  discrimination. Because Ms. Solis has not established she was discriminated against, the court

13  GRANTS Defendants' Motion for Summary Judgment as to the Fifth cause of action.

### c. Accommodation Claims

15  To support her failure to accommodate and failure to engage in the interactive process

16  claims, Ms. Solis points to the change in her schedule that occurred in the last twenty days of her

17  employment. As discussed in the previous section, Ms. Solis has failed to present evidence or

18  otherwise argue that this schedule is outside the bounds of an appropriate accommodation.

19  Accordingly, the court GRANTS Defendant's Motion for Summary Judgment as to the Second and

20  Third causes of action.

### d. Labor Code Section 970

22  California Labor Code Section 970 provides in pertinent part:

> No person, or agent or officer thereof, directly or indirectly, shall influence, persuade, or
> engage any person to change from ...any place within the State to any place outside... for
> the purpose of working in any branch of labor, through or by means of knowingly false
> representations, whether spoken, written, or advertised in printed form, concerning either:
> (a) The kind, character, or existence of such work; [or] (b) The length of time such work
> will last, or the compensation therefor....

To state a claim under § 970, a plaintiff must establish, as a threshold matter, that the defendant made a knowingly false representation.  Funk v. Sperry Corp. 842 F.2d 1129, 1133 (9th Cir. 1988).  Ms. Solis argues that she received a job offer from Ms. Child in the Kaysville store, and that at the time the job offer was made, Ms. Child knew she had not yet received approval for the hire.  Even assuming that a job offer was made, Ms. Solis has not submitted evidence to show that Ms. Child made a knowingly false statement.  At the time of her phone conversation with Ms. Child, the hiring freeze was not yet in effect and Ms. Child had authorization to hire a qualified person to work at the Kaysville pharmacy.  Murray Decl. Ex. 3; Supplemental Declaration of Berrie Child ISO Def. MSJ ¶ 4, Dkt. No. 53-5.  Ms. Solis has not come forward with evidence to show that Ms. Child knew at the time that she would not be able to hire Ms. Solis.  Therefore, the court GRANTS Walgreens' Motion for Summary Judgment as to Ms. Solis' Seventh cause of action.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Walgreens' Motion for Summary Judgment.  The Clerk shall close the case.

**IT IS SO ORDERED**

Dated: May 9, 2013

_____
EDWARD J. DAVILA
United States District Judge

13
Case No.: 5:11-CV-00605-EJD
ORDER GRANTING WALGREENS' MOTION FOR SUMMARY JUDGMENT